## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**UNITED STATES OF AMERICA**

        **v.**                                      **Criminal Case No. 3:17cr98**

**THOMAS ALLEN BACON,**

        **Defendant.**

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Defendant Thomas Allen Bacon's Motion for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF No. 38.)   The United States responded in opposition (the "Opposition"). (ECF No. 46.)  Bacon filed a reply to the Opposition, (ECF No. 50), and a supplement to his reply, (ECF No. 51).  This matter is ripe for disposition.  The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.  For the reasons that follow, the Court will deny the Motion for Compassionate Release.  (ECF No. 38.)

## I.  Background

On May 19, 2017, Bacon was charged by criminal complaint with two criminal counts of possession of a firearms/ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.)  On July 18, 2017, Bacon was indicted on the two criminal counts.  (ECF No. 9.) On November 14, 2017, Bacon entered into a written plea agreement with the United States in which he pleaded guilty to Counts One and Two.  (ECF No. 16.)

Prior to Bacon's March 13, 2018 sentencing, the probation officer prepared the Presentence Report ("PSR"), summarizing Bacon's offense conduct and his criminal history. (ECF No. 23.)

Regarding his underlying offense conduct, on August 3, 2015, during a traffic stop, Bacon was found in possession of a Glock 19 semi-automatic handgun and assorted ammunition. (ECF No. 23, at 5.)  During the stop, officers also recovered two cellphones and a digital scale that later tested positive for cocaine.  (ECF No. 23, at 6.)  The cellphones included text messages initiating the sale of a 9-millimeter firearm and photographs of Bacon in possession of multiple firearms.  (ECF No. 23, at 6.)  Approximately nineteen (19) months later, on April 19, 2017, Virginia State Police conducted a controlled marijuana delivery and observed Bacon move the marijuana into a residence.  (ECF No. 23, at 6–7.)  Law enforcement then executed a search warrant of that residence and Bacon's car, during which they found a rental agreement for a storage unit in the car's glove compartment.  (ECF No. 23, at 7.)  A search of the storage unit returned an Arminius HW7 .22 caliber revolver, a Mossberg 500 pistol grip 12-gauge shotgun, a Kahr VW 40 .40 caliber pistol, assorted ammunition, counterfeit United States currency, cocaine, crack cocaine, and oxycodone pills.  (ECF No. 23, at 7.)

A review of Bacon's telephone calls during his post-arrest detention revealed that he instructed his brother to go to the storage unit and retrieve the items inside.  (ECF No. 23, at 7.) Thus, at sentencing, Bacon received a two-level enhancement on Count Two for obstruction of justice under U.S.S.G § 3C1.1.  (ECF No. 23, at 10.)  Bacon correctly received additional enhancement points for the trafficking of firearms (U.S.S.G § 2K2.1(b)(5)), possessing firearms in connection with another felony offense (possession with the intent to distribute cocaine and

marijuana) (U.S.S.G § 2K2.1(b)(6)(B)), possessing three to seven firearms (U.S.S.G § 2K2.1(b)(1)(A)), and possessing a stolen firearm (U.S.S.G § 2K2.1(b)(4)(A)). (ECF No. 42, at 9–10.) However, Bacon also received a two-level reduction for his ultimate acceptance of responsibility under U.S.S.G. 3E1.1(a)–(b). (ECF No. 23, at 10.) Bacon's Total Offense Level was calculated to be 34. (ECF No. 23, at 10.)

Bacon's prior offenses established a Criminal History Category of III. (ECF No. 23, at 16.) His prior convictions include eluding police by auto, burglary, criminal trespassing, armed robbery, and possession of a weapon for unlawful purpose. (ECF No. 23, at 11–16.) Pursuant to the Sentencing Guidelines, Bacon's Total Offense Level of 34 and Criminal History Category of III resulted in a recommended sentencing range of 188-235 months. (ECF No. 23, at 25.) The Court sentenced Bacon to 120 months' incarceration on Count One and 92 months' incarceration on Count Two, running consecutively, to be followed by three years of supervised release concurrently. (ECF No. 32, at 2–3.) The Court later reduced Bacon's sentence by 15% to an overall term of 181 months (102 months for Count One and 79 months for Count Two). (ECF No. 46, at 12.)

The PSR also provided information on Bacon's physical condition, noting that an MRI conducted in 2018 reported "results 'consistent with neural for[a]minal encroachment from L2-L5'" and "[l]ower lumbar disc and facet degenerative changes resulting in a crowding of the central canal and neural foramen with both cord and nerve impingement" as a result of gunshot wounds Bacon sustained in 2014. (ECF No. 23, at 20–21.) Bacon self-reported that an additional consequence of his gunshot wounds was a "major surgery during which he had half of his lung removed." (ECF No. 23, at 20.)

3

Bacon is currently housed at FCI Fort Dix in Joint Base McGuire-Dix-Lakehurst, New Jersey. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/. The Bureau of Prisons ("BOP") lists Bacon's projected release date as April 20, 2029. *See id.*

On December 29, 2020, Bacon, acting through Counsel, filed the instant Motion for Compassionate Release. (ECF No. 38.)  In the Motion, Bacon broadly discusses the public health crisis in BOP facilities due to the emergence of COVID-19, including difficulty in social distancing and an unsanitary environment. (ECF No. 38, at 16–17.)

Bacon also describes how his health conditions make him particularly susceptible to complications from COVID-19. (ECF No. 38, at 12–15.)  Bacon, now forty-four years old, contends that he is particularly susceptible to COVID-19 because he "has lost part of a lung and suffers a variety of nerve related pain and numbness that make life very difficult in prison." (ECF No. 38, at 12.)  Bacon also avers that he has "degenerative disk disease, high blood pressure and chronic pain that cannot be relieved by the medical department." (ECF No. 38, at 12.)

The United States opposes Bacon's request for compassionate release, arguing that Bacon has not demonstrated that he faces a particularized health risk from COVID-19, that he has contracted and recovered from COVID-19 without complication, and that the sentencing factors set forth in 18 U.S.C. 3553(a) weigh against his immediate release. (ECF No. 46, at 22–32.)

4

## II.  Legal Standard:  Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[1]  Prior to the First Step Act in 2018, an individual could not petition the district court for relief on compassionate release grounds without approval from the BOP.  *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020).  Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct.  *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v.*

---

[1] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

*McDonald*, 986 F.3d 402, 411–12 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)).  However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification.  *See* 28 U.S.C. § 994(t).

### A.    <u>Exhaustion of Administrative Remedies</u>

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time.").  "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court."  *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021).

The court may waive the exhaustion requirement, however, in certain circumstances.  *United States v. Jones*, No. 3:11cr249, ECF No. 47 at *2–3 (E.D. Va. Apr. 3, 2020).  Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'"  *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020)).

6

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

**B.     Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release**

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission ("U.S.S.G.") further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109 at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[2]

---

[2] The United States Sentencing Guideline § 1B1.13 provides that:

Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

7

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions[3], which means that district courts need not conform, under § 3582(c)(1)(A)'s

---

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

[3] On January 12, 2023, the United States Sentencing Commission issued Proposed Amendments to the Sentencing Guidelines, including an amendment to § 1B1.13. While the public comment period for the Proposed Amendments just concluded on March 14, 2023, and the guidelines are not currently active, the proposal illustrates what likely is the Commission's view on what constitutes "extraordinary and compelling reasons" for a sentence reduction under the First Step Act. The proposed language in § 1B1.13(b)(1) states in relevant part:

(D)     The defendant presents the following circumstances–

(i)     the defendant is housed at a correctional facility affected or at risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii)    the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii)   such risk cannot be mitigated in a timely or adequate manner.

consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283; *see also Kibble*, 992 F.3d at 326 (concluding that § 1B1.13 does not apply to compassionate release motions that inmates (or counsel acting on behalf of inmates) file directly with the district court). Furthermore, the Guidelines, while helpful, are advisory and do not bind the Court.

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

### III.  Analysis

After due consideration, the Court will deny the Motion.  (ECF No. 38.)  Although Bacon submits, (ECF No. 38, at 7; ECF No. 38-4), and the United States concedes, (ECF No. 46, at 13), that he has exhausted his administrative remedies, the Court will deny the Motion upon finding that Bacon does not offer any "extraordinary and compelling reasons" to support his request for release.  18 U.S.C. § 3582(c)(1)(A)(i).

Bacon contends that the Court should grant the Motion because of the unsafe COVID-19 conditions at FCI Fort Dix and his particular susceptibility to complications from the virus. (ECF No. 38, at 3.)  However, the record does not support that Bacon faces a particular susceptibility to COVID-19 complications.

---

*See* UNITED STATES SENTENCING COMMISSION, PROPOSED AMENDMENTS TO THE SENTENCING GUIDELINES (PRELIMINARY) (2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230201_RF-proposed.pdf [hereinafter PROPOSED AMENDMENTS].

Bacon states that he had a lung resection surgery that "removed half of [his] lung," (ECF No. 38, at 11), but no medical records were provided to the Court indicating that Bacon ever underwent such a surgery.[4] Notably, when Bacon once complained of chest pain to BOP medical staff in June of 2020, it was reported that he had "no significant past medical history." (ECF No. 49, at 23.) In addition, the chest x-ray Bacon received after his complaints makes no mention of any abnormalities in his lungs. (ECF No. 49, at 58 ("Lungs are clear. No pleural effusions. Bony elements are within normal limits for age. No acute osseous abnormality").) While Bacon's medical records do show a number of high blood pressure readings between March and December 2020, (ECF No. 49, at 30), they do not contain a diagnosis of high blood pressure or indicate that medication is required to control the issue at this time. Nor does such a prescription appear on the records provided.

Even assuming that Bacon has had a large portion of his lung removed, the medical records provided to the Court do not demonstrate that Bacon suffers from a reduced lung capacity that would make him particularly susceptible to severe complications from COVID-19. Bacon consistently has a healthy blood oxygen level between 98%–100%, and he was able to maintain those levels while he had COVID-19. (ECF No. 49, at 30.) In fact, Bacon was an entirely asymptomatic COVID-19 patient who repeatedly denied experiencing symptoms[5] and

---

[4] Bacon also complains of "nerve related pain and numbness" and "degenerative disk disease", (ECF No. 38, at 12), which, in contrast, are supported by the submitted medical records, (ECF No. 49). However, Bacon does not contend that these medical concerns make him particularly susceptible to complications from COVID-19.

[5] Bacon's supplemental reply letter contains assertions that he is "still suffering from shortness of breath, dizziness, and chest pains" from COVID-19. (ECF No. 51-1.) This contradicts what Bacon has reported to BOP medical staff. (ECF No. 49, at 32–36 ("No: Cough, Shortness of Breath, Fatigue, Body aches, Sore throat, Diarrhea, Headache, loss of taste or smell, nausea or vomiting").)

declined daily assessments with medical staff throughout the course of his illness. (ECF No. 49, at 1–14.) On this record, even given the current public health declaration that is still in effect, the Court cannot find that Bacon is at increased risk of suffering severe medical complications as a result of any ongoing outbreak. He does not establish extraordinary or compelling reasons supporting a reduction of his sentence under U.S.C.§ 3582(c)(1)(A)(i).

Finally, as of March 17, 2023, Fort Dix only has three active COVID-19 cases among 3,917 inmates, and zero cases among staff. *See* Bureau of Prisons, *BOP COVID-19 Statistics*, https://www.bop.gov/coronavirus/covid19_statistics.html. The records before the Court do not demonstrate whether Bacon has opted to receive the COVID-19 vaccine, but Fort Dix reports that 3,364 inmates and 277 staff have been vaccinated. *See id.* Clearly, Fort Dix is not a facility "affected or at risk of being affected by an ongoing outbreak of infectious disease." *See* PROPOSED AMENDMENTS § 1B1.13 (b)(1)(D)(ii).

The Court will nonetheless consider Bacon's request under the applicable statutory sentencing factors articulated in 18 U.S.C. § 3553(a). Upon review, the number and types of firearms seized alone is alarming, but when coupled with illegal drugs and counterfeit currency, the nature and circumstances of the offense are especially dangerous. This Court does not view the trafficking of firearms to people who cannot otherwise obtain them, as Bacon and his community's letters suggest, as a victimless crime. In fact, a firearm that was reported stolen by Bacon's brother was recovered in the possession of a lifelong friend of Bacon's in New Jersey (where Bacon was living at the time) at the scene of a triple homicide. (ECF No. 46, at 7.)

In addition, as Bacon himself has stated, the length of Bacon's sentence for the two counts of possession of a firearm and ammunition as a convicted felon was intended to account for the "breadth and scope of the criminal activity that [Bacon] was engaged in[,]" (ECF No. 27,

11

at 11–12), that could have resulted in "other charges that were not prosecuted[,]" (ECF No. 38, at 6). And Bacon has served less than 4% (nearly six years) of the sentence that the Court deemed necessary to "reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[,] to afford adequate deterrence to criminal conduct[, and] to protect the public from further crimes of the defendant[.]" 18 U.S.C. § 3553(a)(2). The current, relatively brief, term of service does not support compassionate release because it would not, among other things, provide adequate deterrence. *See United States v. Evans*, No. 3:00cr63, 2020 WL 5121331, at *7 (E.D. Va. August 31, 2020) (noting that "courts within the jurisdiction of the Fourth Circuit have considered the length of time served an important factor when ruling on motions for compassionate release during the COVID-19 pandemic."); *see also Robinson*, 2020 WL 4041436, at *7; *United States v. Johnson*, No. JKB-14-356, 2020 WL 3316221, at *1 (D. Md. June 17, 2020). Bacon's underlying convictions demonstrate that he presents a threat to the public due to his disregard for the law.

Bacon's criminal history also demonstrates his lack of respect for the law and a high risk of recidivism. Bacon was a Bloods gang member and has an extensive criminal history, including participation in an armed robbery that resulted in a murder. (ECF No. 42, at 14–15.) Bacon served seventeen years in prison for the armed robbery and had only been on supervised release for about one year before committing the offenses that led to the underlying convictions in this matter. (ECF No. 46, at 11, 27.) Bacon's criminal history demonstrates that he presents a threat to the public due to his disregard for the law.

Further, Bacon does not propose conditions of release that would protect the safety of the community. Bacon's release plan is to live with his mother in Richmond, Virginia and to work for his brother. This does not convince the Court that Bacon will not pose a danger to the public

12

or protect the safety of the community.  Bacon was living with his mother when he committed

the underlying offenses and enlisted this same brother to obstruct justice by clearing out his

storage unit.  (ECF No. 46, at 30–31.)  The Court finds that the seriousness of Bacons offense,

the totality of his record, and the need to protect the public outweigh granting his request for

immediate release.

Bacon next avers that his history and characteristics while incarcerated demonstrate his

rehabilitation.  (ECF No. 38, at 22.)  Bacon highlights his completion of "numerous educational,

therapeutic, and vocational classes" while incarcerated and the strong support of his community.

(ECF No. 38, at 22–23.)  In *United States v. Martin*, the Fourth Circuit vacated and remanded the

district court's denial of both defendants' motions to reduce sentence because the district court

failed to address any new mitigating evidence when denying the motions.  916 F.3d at 397–98.

The Fourth Circuit has explained that if an individual is eligible for a sentence reduction, the

district court must give weight to the person's "past transgressions" as well as "the multitude of

redemptive measures that [the person] has taken."  *Id.* at 397.  However, Congress has made

clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and

compelling reason."  28 U.S.C. § 994(t).  With these dictates in mind, the Court acknowledges

Bacon's participation in BOP programs and the very strong support of his friends and family

demonstrated in the numerous letters the Court received, but these measures do not warrant his

early release in light of the seriousness of his convictions and the remaining time on his sentence

to be served.  In addition, Bacon does have three discipline reports from the nearly six years he

has been incarcerated.  (ECF No. 38-2, at 3.)  Bacon was sanctioned for failing to follow safety

regulations, being in an unauthorized area, and for possession of a hazardous tool.  (ECF

No. 38-2, at 3.)

13

Finally, the Court recognizes the grave health risks prisoners have faced during this pandemic and commends the nationwide efforts to promptly vaccinate prison staff and inmates. Fortunately, Bacon has recovered from COVID-19, and the BOP reports that over 85% of inmates at Fort Dix FCI have now been vaccinated. *See* Bureau of Prisons, *BOP COVID-19 Statistics,* https://www.bop.gov/coronavirus/covid19_statistics.html.  The Court requests that the BOP issue a COVID-19 vaccine to Bacon if he agrees and has not received one already. Considering the foregoing, the Court concludes that the record does not justify Bacon's immediate release from federal imprisonment.

### IV.  Conclusion

For the reasons explained above, the Court will deny the Motion for Compassionate Release.  (ECF No. 38.)

An appropriate Order shall issue.

Date:  3-21-2023
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge